UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**DONS CARWASH L L C**  CASE NO. 2:22-CV-02183

**VERSUS**  JUDGE JAMES D. CAIN, JR.

**ARCH INSURANCE CO**  MAGISTRATE JUDGE CAROL B. WHITEHURST

### MEMORANDUM RULING

Before the court are cross-motions for summary judgment [docs. 27, 29] filed by plaintiff Don's Carwash LLC ("Don's") and defendant Arch Insurance Company ("Arch"). Both motions are opposed. Docs. 34, 35.

### I.
#### BACKGROUND

This suit arises from damage to a car wash owned by Don's in Lake Charles, Louisiana, during Hurricane Laura. Dominick "Don" Bruno is the sole owner of Don's, which has carwash facilities throughout the Lake Charles area. Doc. 27, att. 4, ¶ 1. The claims in this matter relate to the carwash at 3700 Ryan Street. At all relevant times the property was insured under a policy issued by Arch, providing coverage for building damage, personal property, and lost business income and extra expense. Doc. 29, att. 3. Don's alleges that Arch failed to timely or adequately compensate it for its covered losses. It filed suit in this court, raising state law claims for breach of contract and bad faith. Doc. 1. The matter is set for bench trial before the undersigned on August 12, 2024. Doc. 19.

The parties now bring cross-motions for summary judgment, relating to a public adjuster contract into by Don's with attorney Scott Greenwald and Adjusters International. *See* doc. 27, att. 4, p. 3. Adjusters International then negotiated a settlement of the Ryan Street location's claim on behalf of Don's for $362,677. In exchange, Bruno executed a release on behalf of Don's on January 3, 2022. Doc. 29, att. 17. Don's now contends that the settlement was grossly insufficient in light of its business interruption claim and seeks to void the release. Doc. 27. Meanwhile, Arch maintains that it is entitled to summary judgment because plaintiff entered into a valid compromise under Louisiana law. Doc. 29. Alternatively, it seeks to enforce the settlement on the bases of *res judicata* or accord and satisfaction. *Id.*

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v.*

*Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Don's argues that the settlement must be voided because (1) the Service Agreement was an illegal contingency fee agreement between Don's and a public adjuster and (2) Adjusters International engaged in the unauthorized practice of law in negotiating the settlement on behalf of Don's. Arch disputes both of these claims. In the alternative, it maintains that the release must be enforced on the grounds of accord and satisfaction or *res judicata*.

**A. Contingency fee agreement**

Don Bruno signed a "Services Agreement" on September 5, 2020, stating that Don's retained "**SCOTT D. GREENWALD, Attorney**, and **ADJUSTERS INTERNATIONAL** (collectively, 'Adjusters International'), to measure and document

its losses, and present [its] claims to the insurance company(s)" for damage to the insured property occurring on August 26 and 27, 2020. Doc. 27, att. 4, p. 3. The Service Agreement further provides that Adjusters International will be paid an hourly rate "based on the rates set forth on the attached Schedule." *Id.* That schedule states:

> INSURED shall pay fees based on hours incurred by Adjusters International at the following rates, provided however that in no event shall the aggregate hourly fees paid hereunder exceed <u>eight</u> percent (<u>8</u>%) of the total claim recovery. Payment of fees due [to] Adjusters International hereunder shall not be due from the INSURED to Adjusters International, until such time as insurance claim proceeds are received by the INSURED, on a periodic basis.

| GGG/AI Consultants | Hourly Rates |
|---|---|
| Partners/Principals | $690.00 |
| Senior Adjusters | $565.00 |
| Staff Adjusters | $320.00 |
| Administrative Staff | $195.00 |

*Id.* at 5.

> Under Louisiana law, a public adjuster
>
> shall not solicit for or enter into any contract or arrangement between an insured and a public adjuster which provides for payment of a fee to the public adjuster which is contingent upon, or calculated as a percentage of, the amount of any claim or claims paid to or on behalf of an insured by the insurer and any such contract shall be against public policy and is null and void.

La. R.S. § 22:1703(A). Don's maintains that Adjusters International's fee arrangement is a contingency fee, in violation of this provision, because it is contingent upon payment to the insured. But as Arch points out, Louisiana law likewise prohibits clauses in public adjuster contracts that would allow for collection of the public adjuster's fee "when money is due from an insurance company, but not paid . . . ." *Id.* at § 22:1704(D)(1). Accordingly,

the bar on contingency fees can only reasonably be read to encompass those fees that are "contingent upon . . . the amount of" the claim rather than the fact of payment. Here the contract provides for a flat hourly fee for services, capped at a maximum of eight percent of the insured's recovery and recoverable only once the insured has been paid. The court finds no basis under Louisiana law for voiding the contract based on these terms.

### B. Unauthorized practice of law

Next, Don's contends that the settlement should be voided because Adjusters International engaged in the unauthorized practice of law. Public adjusters are prohibited from practicing law under both the Louisiana Public Adjuster Act ("LPAA"), La. R.S. § 22:1691 *et seq.*, and more generally under Louisiana Revised Statute 37:213. The "practice of law" means:

> (1) In a representative capacity, the appearance as an advocate, or the drawing of papers, pleadings or documents, or the performance of any act in connection with pending or prospective proceedings before any court of record in this state; *or*
> (2) For a consideration, reward, or pecuniary benefit, present or anticipated, direct or indirect;
> (a) The advising or counseling of another as to secular law;
> (b) In behalf of another, the drawing or procuring, or the assisting in the drawing or procuring of a paper, document, or instrument affecting or relating to secular rights;
> (c) The doing of any act, in behalf of another, tending to obtain or secure for the other the prevention or the redress of a wrong or the enforcement or establishment of a right; or
> (d) Certifying or giving opinions as to title to immovable property or any interest therein or as to the rank or priority or validity of a lien, privilege or mortgage as well as the preparation of acts of sale, mortgages, credit sales or any acts or other documents passing titles to or encumbering immovable property.

La. R.S. § 37:212.

Pursuant to the Service Agreement[1], Adjusters International vice president Ralph Sampson worked on behalf of Don's to negotiate a settlement of the claim. To this end he engaged in discussions with Arch's third-party administrator, McNeil & Company, in December 2021. Doc. 27, att. 5, pp. 3–9. Darla Bruno Meyer, manager of Don's, was copied on all correspondence but did not directly engage in the discussion. *See id.* Sampson noted that "[t]he disputed difference between the amount claimed and as valued by [McNeil] for [Business Interruption/Extra Expense]" was $478,650.00 and proposed splitting the difference as part of the proposed settlement. *Id.* at 5. With release of other claimed amounts, he suggested a global settlement of $375,354.00. *Id.* at 4–5. On January 3, 2022, Bruno executed a release settling all claims relating to the Ryan Street location for $362,677.00. Doc. 27, att. 4, pp. 7–10.

Bruno avers that he signed the release on advice from Ralph Sampson that "it would help get Arch Insurance to pay on my hurricane insurance claims that were opened on my other business locations" and that no lawyer explained the release to him. Doc. 27, att. 4, ¶ 8. He also maintains that the true value of his business interruption claim is substantially higher. *Id.* at ¶ 9; *see* doc. 31, att. 57. Regarding the Ryan Street settlement, Sampson testified:

---

[1] As described above, the agreement is between Don's and "**SCOTT D. GREENWALD, Attorney**, and **ADJUSTERS INTERNATIONAL** (collectively, 'Adjusters International')." Doc. 27, att. 4, p. 3. It is signed by Mr. Greenwald, who provides his Louisiana bar roll number. *Id.* According to Mr. Bruno's declaration, he never intended to hire Mr. Greenwald as his attorney and never met with him or obtained legal advice from him. *Id.* at ¶¶ 6–7. Adjusters International vice president Ralph Sampson testified that Greenwald did not do the work of a public adjuster and instead worked in client management. Doc. 27, att. 6, p. 166. He averred, however, that the intent of the contract was not for Greenwald to represent Don's as an attorney and that "[t]here was no legal aspect to that as far as anything else." *Id.* at 167. Accordingly, it appears undisputed that Greenwald was not employed as an attorney for Don's and did not provide such services on behalf of Adjusters International.

> **A.** . . . . [W]hen Darla got involved, things were already pear shaped because there was a lot of money still on the table that needed to be reconciled and paid out, and they just wanted to get their businesses back.
> And so we discussed a bunch of different options, like, how, what is the best way to get there. Which ones do we have smaller disagreements on that we could potentially say, okay, look, maybe we can compromise and just let that one go. If they make the appropriate payment here, then, you know, it kind of balances itself out a little bit. It's not ideal. It's not what you're entitled to. You should be getting every penny you're owed.
> But to try and move it ahead, you know, part of what we do is dispute resolution, right . . . . And so we had a few different conversations about what sort of options were available, what we could do, what might, might not work.
> [. . . .]
> **Q.** Okay. And so was it your advice that they compromise on Ryan Street in order to show some act of goodwill on their part to get their other claims moving?
> **A.** Yeah. I mean, I suggested that to them that if they took a look at the entire picture rather than isolate them down to—sometimes you get lost in the details.
> And so, you know, it may be beneficial to step back a little and look at this and see if it makes sense, you know. We're not that far apart. It closes one thing out, it makes us, you know, be able to focus on the other items. And perhaps that could be a good route to go. Yeah.
> We most certainly had conversations like that, you know, broken down into various parts into big picture, trying to find a solution.

Doc. 27, att. 6, pp. 177–79.

Louisiana courts have found that a public adjuster engaged in the unauthorized practice of law when, "pursuant to a contingency and/or percentage-based fee arrangement, [he] individually advised clients of issues and rights concerning the redress of legal wrongs under their insurance policies, negotiated settlements and directly contacted insurers to discuss and evaluate the merits of his clients' insurance claims." *La. State Bar Ass'n v. Carr and Assocs., Inc.*, 15 So.3d 158, 170 (La. Ct. App. 1st Cir. 2009); *Meunier v. Bernich*, 170 So. 567 (La. Ct. App. 1936); *see also La. Claims Adjustment Bureau, Inc. v. State*

*Farm Ins. Co.*, 877 So.2d 294, 299 (La. Ct. App. 2d Cir. 2004) ("[W]hen a person who is not an attorney represents another in a negotiation and settlement of a personal injury claim for consideration, pursuant to a contingency fee contract, that person has engaged in the unauthorized practice of law.").

As discussed *supra*, Adjusters International was compensated pursuant to a fee schedule rather than a contingency fee. The adjuster's involvement and counsel in settlement negotiations, however, crossed a line. Based on Sampson's advice, Don's accepted a lower valuation on its business interruption claim in the hopes that Arch would then be more amenable to a settlement of its claims on other properties. This advice was beyond the scope of Sampson's expertise as a public adjuster. "While the objective valuation of damages may in uncomplicated cases be accomplished by a skilled lay judgment, an assessment of the extent to which that valuation should be compromised in settlement negotiations cannot." *Dauphin Cnty. Bar Ass'n v. Mazzacaro*, 351 A.2d 229, 233–34 (Pa. 1976). "[C]ourts considering this issue have concluded that the negotiation of a settlement on behalf of the injured party requires the exercise of professional judgment and is, therefore, the practice of law." *Bergantzel v. Mlynarik*, 619 N.W.2d 309, 313–15 (Iowa 2000) (collecting cases). Accordingly, the release was procured through the unauthorized practice of law.

Louisiana Revised Statute 37:213.1(D) provides a right of action "for general damages, special damages, and all other damages suffered by the aggrieved party" against a person engaging in the unauthorized practice of law. Don's maintains that it has a remedy against Arch, too, arguing that the Service Agreement is an absolute nullity and that all

agreements flowing from it must therefore be voided. Louisiana courts have treated contracts between non-attorneys and their "clients" for the unauthorized practice of law as absolute nullities. *See La. Claims Adjustment Bureau, Inc.*, 877 So.2d at 299–300 ("We likewise find that a contract of employment for a person who is not a licensed attorney, who agrees to perform legal services without being authorized to do so, is against public policy; and, consequently, the contract is absolutely null."); *accord Meunier*, 170 So. 567. A Louisiana court has also voided a judgment of possession obtained by an actor through the unauthorized practice of law as the fruit of an annulled contract.[2] *See Dunn v. Land and Marine Properties, Inc.*, 609 So.2d 284 (La. Ct. App. 3d Cir. 1992). It does not follow, however, that a contract between the "client," signed on his own behalf, and a third party must be voided.

The terms of the release are easily comprehended and make clear that Don's releases its claims against Arch, including those for business income loss, in exchange for the payment of $362,677.00. *See* doc. 27, att. 4, pp. 7–8. Additionally, the release provides:

> **10. Advice of Counsel**
> This Release is made and executed with the advice of counsel, and neither Party has been coerced or induced to enter into this Release by any improper action of the other Party.

---

[2] In that matter, heirs to sixty acres of land in St. Martin Parish entered into a "Contract of Representation" with Land and Marine Properties, Inc. to help them acquire ownership of their ancestors' estate. The contract included a power of attorney from the heirs to the company. It was assigned to an attorney, who filed a judgment of possession placing himself in possession of one half of the estate and the heirs in possession of the other. The heirs petitioned to nullify the judgment, upset over the portion allocated to the attorney, and the court determined that the "Contract for Representation" was on its face a contract for legal services to be provided by a non-attorney. The appellate court agreed and held that the contract was null and void and "the judgment of possession, which was a result of the contract, is null and void also." *Id.* at 290.

*Id.* at 10. Sampson testified that he provided the release to Darla Meyer and Don Bruo, advised them that they could talk to an attorney about it, and that they had time to do so. Doc. 27, att. 6, p. 183. Bruno states in his declaration that he was "persuaded" to sign the release by Adjusters International, but neither he nor Meyer disputes Sampson's testimony as to their opportunity to seek legal advice. *See* doc. 27, atts. 4 & 5. Additionally, neither individual indicates that they were unwitting of the release's terms. It is also undisputed that final payments were issued on January 11, 2022. Doc. 29, att. 19.

Under Louisiana law, a compromise is a release executed in exchange for consideration. *Brown v. Drillers Inc.*, 630 So.2d 741 (La. 1994). "A compromise agreement freely made has the dignity and force of a definitive judgment so far as it definitely and irrevocably fixes the rights and liabilities of parties thereto as relating to the subject-matter dealt with." *Wholesale Distrib. Co. v. Warren*, 84 So.2d 250, 252 (La. Ct. App. 2d Cir. 1955) (citations omitted). Public policy favors such compromises, and the party seeking rescission of same bears the burden of proving its invalidity. *Ellison v. Michelli*, 513 So.2d 336, 339 (La. Ct. App. 4th Cir. 1987).

The law provides plaintiff with a remedy against the adjuster for overstepping his role. At the same time, a plaintiff may enter into a valid settlement even when he proceeds without an attorney. *See, e.g.*, *Randall v. Martin*, 868 So.2d 913, 916 (La. Ct. App. 5th Cir. 2004) ("[P]laintiff had an opportunity to consult an attorney regarding his legal rights and to seek medical care to learn of the extent of his injuries."). Here the testimony establishes only that plaintiff, who had the opportunity to consult with an attorney but declined to do so, accepted a lower valuation of his business interruption claim based on the advice of a

non-attorney. It does not show that plaintiff was at an intellectual disadvantage. While plaintiff now contends in opposition to Arch's motion that it did not understand it was also releasing its claims for bad faith and attorney fees, the declaration from Mr. Bruno provides no such indication. Meanwhile, the terms of the four-page release that he read and signed contain broad and unmistakable language releasing "McNeil & Co and Arch Insurance Company . . . of and from any and all claims . . . of whatever kind or character, known or unknown . . . that Don's or the Releasors have, have had, or may have[.]" Doc. 27, att. 4, p. 8. It also contains the following with respect to bad faith claims:

> In further consideration for the aforementioned Settlement Payment by Arch, the Releasors do hereby release, remise, acquit and forever discharge the Releasees from known and unknown, accrued or not yet accrued, anticipated or unanticipated, foreseen and unforeseen, contingent or not contingent, suspected or unsuspected, or direct, indirect or derivative claims, under the Policy resulting from Arch's claim handling practices and/or relating to any assertions, allegations or claims that Arch committed bad faith, engaged in improper or unfair claims practices, or breached the covenant of good faith and fair dealing that is alleged or could have been alleged with respect to the Claim.

*Id.* "An individual who signs a written instrument is charged with the responsibility of having read it and is presumed to know and understand its contents." *Brown v. Simoneaux*, 593 So.2d 939, 941 (La. Ct. App. 4th Cir. 1992). There appears to be no basis for setting aside the compromise. All claims in this matter have thus been released and must be dismissed.

## IV.
### CONCLUSION

For the reasons stated above, plaintiff's Motion for Summary Judgment [doc. 27] will be **DENIED** and defendant's Motion for Summary Judgment [doc. 29] will be **GRANTED**. Accordingly, all claims in this matter will be **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers on the 3rd day of July, 2024.

_____
JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**